January 14, 2008

United States District Court
P.O. Box 711
Montgomery, Alabama 36101-0711

Attn: Susan Russ Walker
      United States Magistrate Judge

RE: SM 2007 000341        Action No. 3:07-CV-1091-WKW
    SM 2007 000342        Action No. 3:07-CV-1092-WKW


In the United States *Motion to Dismiss,* it is stated that the Plaintiff did not comply with FTCA due to not having filed an administrative claim. I wish to submit to the court the attached documents which are the only information provided to me as a TSP participant.

(1) Thrift Savings Plan, pages 11-15, Your Civil Service Retirement System, GRB 1999.
(2) Summary of the Thrift Savings Plan for Federal Employees TSPBK08 pages 42-44.
(3) General Information and Instructions Form TSP 77 (10/2005)

**None of these documents provide any information on the process a TSP participant needs to follow in order to file an administrative claim so that a tort suit against the United States government may be commenced.**

Also, in my telephone conversations with Birmingham Office Staff, I was never able to receive the name of any local individual with authority other than being told to write to the Director of the Board. **All of this is stated in my letter of September 15, 2007 to Mr. Long. I never received a reply to that letter, nor was I informed of the administrative claim process.**

My husband and I still fail to see how the government's Thrift Savings Plan can be allowed to function without any one person having authority and responsibility. In document 1, page 12, item 2: it states the Board members are appointed by the President who select an Executive Director. Mr. Long does have the responsibility for the program, and he needed to identify an avenue for correction of problems and errors as they occur. I'm sure I am not the only federal employee who has suffered due to mismanagement of a retirement account. The government does contract out services, and a system of checks and balances needs to be in place for money matters.

As stated in a previous document, I followed the process identified in General Information and Instructions.

    1. In a telephone conversation with a TSP staff, I stated my plan to request an Age Based Withdrawal with **payment to be made in January, 2007.** I was directed and assisted with instructions to the TSP Web Site.

    2. On **November 22, 2006,** I completed data entry of a TSP-75 Form *Age-Based In-Service Withdrawal Request* which consisted of items 1-45. **NONE of these items allowed for entry of the *DATE THE MONEY WITHDRAWN IS TO BE PAID.***

    3. On **November 22, 2006** at **12:27 p.m.,** I faxed a **PRINTED COPY** of my TSP 75 with the additional information that I wanted the **withdrawal to be done in January, 2007** (per instructions item 2 *(If your request cannot be completed on the Web because additional signatures, information or documentation is needed, you may print the partially completed withdrawal request form at the end of your online session. Keep a copy for your records and mail or fax to BHM office.)*

    4. When I called the Birmingham office on November 28th to check if all information had been received, I was made aware that my ***January request had been ignored.*** **NO PERSON WAS IDENTIFIED NOR WAS ANY PROCESS FOR COMPLAINTS OR CLAIMS PROVIDED TO ME.** Different documents state different processing time frames. In Withdrawing Your TSP Account, page 4, it states you should ***allow several weeks between the time that you submit your completed request and the time that payment is received.***

    5. When the only reply I was able to obtain from the Birmingham Office was that my fax of November 22, 2006 was being treated as a second request for an Age-Based In-Service Withdrawal, I was shocked for the following reasons:

        a. **No one every called me that day or any other time to discuss this concern.** There was only ONE COMPUTER ENTRY REQUEST. Wouldn't there be TWO COMPUTER REQUESTS?

        b. **There was not enough money in my account** for the TSP Service to honor a duplicate request. Why would I ask for something I didn't have?

        c. If the printed copy of my One request was considered a Second, **why was my husband not notified that I had made second request for withdrawal?** Especially on funds, I did not have!

6. **I have followed the process provided in the TSP Plan** for my One Age-Based In-Service Withdrawal Request, but the **Birmingham Office neglected to honor my request for this to be completed in January, 2007,** thereby, incurring an additional tax liability for my husband and me in the amount of **$10, 621** for married filing jointly. The State of Alabama provides an avenue for disputes in small claims court. My husband and I pursued this course, and **we have been awarded default judgments due to untimely responses of Mr. Long and his attorneys**.

Therefore, we request the *Motion to Dismiss* be denied due lack of information provided to Thrift Savings Plan participants in the proper process to be followed for Administrative claims or Tort claims. If the U. S. Courts seek to take management disputes out of the hands of the Alabama Court system, we also request that this Court find the TSP Service must reimburse us for the loss of $10,621 due to their neglect and mismanagement of my account.

Respectfully submitted this 14th January, 2008.


Irene H. Wasserman                    Robert N. Wasserman

Monthly benefits may be paid to a deceased worker's:

(a) Unmarried children under age 18 (or under age 19 if full-time high school or elementary school students);

(b) Unmarried children age 18 or older who were severely disabled before age 22 and who continue to be disabled;

(c) Widow or widower age 60 or older;

(d) Widow, widower or surviving former spouse, if caring for worker's child under age 16 (or a disabled child) who is receiving a benefit based on the earnings of the deceased worker;

(e) Widow or widower age 50 or older who becomes disabled not later than 7 years after the worker's death, or within 7 years after the mother's or father's benefits end;

(f) Dependent parents age 62 or older;

(g) Surviving former spouse at age 60 and a disabled surviving former spouse age 50 or older if the marriage to the worker lasted 10 years or more;

(h) Grandchildren or great-grandchildren under certain limited conditions.

12. **Disability Benefits.** If a Social Security-covered worker meets the Social Security definition of disability (see Question V-35 in Part II), disability benefits begin after the 5th full month of disability. Once benefits start, they will continue as long as the recipient remains disabled. Cases may be reviewed to determine if the disability continues.

In order to receive Social Security disability benefits, a worker must be fully insured and currently insured. To be fully insured for disability purposes, a worker must have at least 1 credit (whenever acquired) for each calendar year after 1950, or, if later, after the year in which he or she attains age 21, and prior to the year in which he or she becomes disabled.

To be currently insured, the worker must meet one of the following requirements:

(a) If under age 24, 6 credits out of the last 3 years before the onset of disability;

(b) If between ages 24 and 31, one-half of the total credits that could have been earned between the 21st birthday and the onset of disability;

(c) If age 31 or older, 20 credits earned during the 10 years ending with the onset of disability.

13. **Social Security Benefits for Family Members of Individuals Receiving Retirement or Disability Benefits.** If a worker is receiving retirement or disability benefits, monthly benefits may be payable to his or her family members as follows:

(a) Unmarried children under age 18 (or under age 19 if full-time high school or elementary school students);

(b) Unmarried children age 18 or older who were severely disabled before age 22 and who continue to be disabled;

(c) Spouse age 62 or older;

(d) Spouse under age 62 if he or she is caring for a child under age 16 (or a disabled child) who is receiving a benefit based on the retired or disabled worker's earnings;

(e) Former spouse age 62 or older who was married to the worker for at least 10 years. (A former spouse who has been divorced at least 2 years and who is age 62 is eligible for divorced spouse benefits whether or not the worker is receiving benefits.)

14. **Medicare**. Medicare is a health insurance program for the aged and certain disabled persons. The program is administered by the Health Care Finance Administration, located in Baltimore, Maryland.

Under the program, hospital and medical insurance is provided to insured individuals age 65 or older; disabled persons under age 65 who have been entitled to Social Security disability benefits for at least 29 consecutive months; and individuals who need dialysis treatment or a kidney transplant because of permanent kidney failure.

Medicare has two parts: hospital insurance (Medicare Part A) and medical insurance (Medicare Part B). The hospital insurance helps pay the cost of inpatient hospital care and certain kinds of follow-up care. The medical insurance helps pay the cost of physicians' services, outpatient hospital services, and certain medical items and services not covered by the hospital insurance.

Social Security taxes pay for hospital insurance. Medical insurance is financed by premiums paid by enrollees ($45.50 per month per person in 1999) and about 75 percent by the Federal Government from general revenues of the U.S. Treasury.

## C.  THRIFT SAVINGS PLAN

The Thrift Savings Plan (TSP) offers CSRS and CSRS Offset employees the opportunity to save a percentage of their salary on a tax-sheltered basis, invest the money in one, two, or three investment funds, and have the interest earned on the investment be tax deferred until retirement.

1. **Thrift Savings Plan Accounts.** CSRS and CSRS Offset employees may contribute up to 5 percent of basic pay to TSP. Unlike FERS, however, there is no automatic or matching contributions by the Government.

    Employee contributions to TSP reduce the employee's gross income for Federal (and in most cases State) income tax purposes. The employee contributions and earnings on those contributions are not taxed until the employee receives a distribution.

2. **Thrift Savings Plan Management.** The three TSP funds are managed by the Federal Retirement Thrift Investment Board, which consists of five members appointed by the President. The Board selects an Executive Director who must have substantial experience in the management of financial investments and pension benefit plans.

3. **Thrift Savings Plan Funds.** Employee contributions to TSP accounts will be invested at the direction of the employee in any of the following funds: a Government Securities Investment Fund (Fund G), a Fixed Income Investment Fund (Fund F), and a Common Stock Index Investment Funds (Fund C).

   (a) Contributions to *Fund G* are invested in special Federal Government securities.

   (b) Contributions to *Fund F* are invested in fixed income securities, using insurance company Guaranteed Investment Contracts (GICs) or other private sector securities, which are selected by qualified professional asset managers and which guarantee the return of the principal plus a specified rate(s) of interest over a specified period of time.

   (c) Contributions to *Fund C* are invested in equities using a stock index fund, essentially a self-regulating index fund which allocates money to companies in the index in proportion to the value of individual companies' stocks to the value of all stocks in the index. As the values change within the index, money is reallocated among the various companies according to their relative values.

   NOTE: In the Spring of 2000, two new investment funds will be available to employees: the I Fund, an international stock index fund; and the S Fund, a small capitalization stock index fund.

4. **Open Seasons.** There are two open seasons each year during which employees may commence, terminate, or change contribution rates and investments. Prior to each Open Season, employees will be advised about the status of their accounts.

5. **Interfund Transfers.** All TSP participants may make interfund transfers up to 12 times a year. An interfund transfer permits the participant to move some or all of the money in his or her account between the three funds. It does not change the allocation of future contributions.

6. **Thrift Savings Plan Distributions.** The funds accumulated in TSP accounts are distributed to employees at separation from service, during active employment if the employee borrows funds under the loan program, and at death. The manner in which the funds are distributed is explained in Part II, Section W.

7. **Designation of Beneficiary.** When a participant dies, the balance in his or her TSP account will be distributed according to the current Designation of Beneficiary (Form TSP-3) on file at the TSP Service Office. If no TSP-3 has been completed, the account will be paid according to the order of precedence

required by law: to the widow or widower; if none, to a child or children (*not* stepchildren); if none, to the parents; if none, to the executor of the participant's estate; if none, to the next of kin.

## D. FACTORS THAT MAY AFFECT AN INDIVIDUAL'S STATUS AS AN ANNUITANT

1. **Disability Annuitants.** If an employee retires on disability before reaching age 60 and OPM determines that the disability is temporary, the annuitant will be examined at regular intervals until age 60. Any disability annuitant, including an annuitant whose disability is considered permanent, may be examined any time OPM deems it necessary. If medical information reveals that the individual has recovered, payment of the disability annuity terminates upon reemployment by the Government or one year after the date of the medical examination showing recovery, whichever is earlier. (If an annuitant refuses to allow an examination, payment of the annuity is suspended until continuance of the disability is established.)

   An individual who retires on disability prior to age 60 must report his or her earnings to OPM every year. If earnings during any year equal at least 80 percent of the current rate of pay for the last position occupied, the individual is considered restored to earning capacity and the disability annuity terminates upon reemployment by the Government or 6 months after the end of the calendar year in which earning capacity is restored, whichever occurs first.

2. **Garnishment.** OPM will honor a valid order for garnishment or attachment of a CSRS annuity when it is based on the retiree's obligation to provide child support or alimony or to enforce a judgment in a child abuse case. However, OPM cannot honor a garnishment order to enforce a commercial debt against a retiree's annuity.

3. **Apportionment.** OPM is required to apportion or divide an annuity or refund in accordance with the express provisions of a qualifying court order effecting a divorce or legal separation.

4. **Marital Changes.** A retiree who elects to provide a survivor annuity for his or her spouse, and whose marriage later terminates for any reason (death, divorce, or annulment), should notify OPM of the change in marital status so that the survivor annuity reduction will terminate and the retiree will be restored to a full annuity. If the retiree remarries, he or she may elect survivor benefits for the new spouse by notifying OPM within 2 years of the date of the marriage. If the retiree makes such an election, he or she owes a deposit (plus interest) to the retirement fund. The retiree must pay the deposit by taking a permanent actuarial reduction in his or her annuity.

Additional marital considerations are:

(a) If an employee is married at time of retirement and does not elect to provide a survivor annuity for his or her spouse (or elects to provide less than full survivor benefits), the employee may elect to increase (only) the survivor benefit within 18 months from the date of retirement. After that period, the election is final and cannot be changed.

The retiree must pay a deposit that includes 1) the difference between the reduction in annuity for the new survivor election and the original survivor election; plus 2) a charge of 24.5% of the amount of the increase from the original survivor base to the new survivor base; plus 3) any applicable interest (variable rate).

(b) Any retiree who marries after retirement may elect survivor benefits for the new spouse within 2 years of the date of the marriage whether or not the retiree elected survivor benefits at time of retirement. In such cases, the retiree owes a deposit to the retirement fund equal to the difference between the amount of annuity actually paid and the amount of annuity that would have been paid if the survivor election had been in effect continuously since retirement or the date the reduction terminated, whichever is later. Interest is assessed against the amount owed at the rate of 6 percent, compounded annually. The retiree must pay this deposit by taking a permanent actuarial reduction in his or her annuity.

(c) If a retiree who is enrolled for self-only coverage under FEHB wishes to provide health benefits coverage for a newly acquired spouse, he or she must inform OPM during the period from 31 days before to 60 days after the marriage. If the individual does not notify OPM during this time, the next opportunity to provide health benefits coverage for the spouse is during the Open Season. Open Season changes take effect January 1 of the following year.

(d) If a retiree is enrolled for self and family coverage under FEHB at the time of the marriage, the new spouse is automatically covered by that enrollment, unless the spouse is covered by his or her own enrollment. A husband and wife may be covered under individual self-only enrollments; however, it is not possible for them to have separate enrollments if either or both have a self and family enrollment. A self and family enrollment covers all eligible family members and dual coverage is not permitted.

5. **Federal Reemployment.** Any retiree may be reemployed in the Federal service after retirement. When an annuitant is reemployed by the Federal Government, the effect on annuity payments depends on the basis for retirement and, in some cases, the type of appointment in which the individual is reemployed.

(a) In general, when an annuitant is reemployed by the Federal Government, the annuity *continues*, and the amount of annuity applicable to the period of reemployment offsets (reduces) the annuitant's salary.

If a reemployed annuitant serves in a covered position for a period of, or equivalent to, at least 1 year of full-time service, he or she is eligible for a supplemental annuity. If a reemployed annuitant serves in a covered position for a period of, or equivalent to, at least 5 years of full-time service, he or she is eligible for a redetermined annuity.

(b) A retiree's annuity *terminates* upon reemployment if (1) the annuity is based on disability and OPM has found the annuitant recovered or restored to earning capacity; (2) the annuity is based on a discontinued service retirement and the new appointment is one that confers retirement (CSRS) coverage; or (3) a National Guard technician is reemployed in any position in the Federal Government after retiring under the special disability retirement provisions.

An individual whose annuity terminates upon reemployment ceases to be an annuitant. Retirement deductions are withheld from his or her pay, and future annuity rights will be determined by the law in effect at time of future separation.

(c) Employees who retired and received a Voluntary Separation Incentive Payment (VSIP) and who are reemployed by the Government (or employed under a personal services contract with the Government) within 5 years of their retirement must repay the VSIP in full. This rule applies to DOD and CIA employees who take VSIP's after March 30, 1994.

6. **Taxation of Civil Service Annuities.** A portion of each annuity payment is subject to Federal income tax and a portion is not. IRS Publication 721, Tax Guide to U.S. Civil Service Retirement Benefits, explains the taxation of civil service annuities. Employees may visit the IRS website (www.irs.ustreas.gov), call 1-800-829-3676, or contact their local IRS office to obtain a copy of this publication. (Federal annuities are treated differently for State tax purposes. Retirees should contact their local State tax office for more information.)

## E. HEALTH BENEFITS

1. **Continuing Health Benefits Coverage after Retirement.** A retiring employee is eligible for continued health benefits coverage, with no reduction in benefits, if he or she retires on an immediate annuity and has been enrolled or covered as a family member in the Federal Employees Health Benefits (FEHB) program (1) since his or her first opportunity to enroll; or (2) for at least 5 years of service immediately preceding retirement. (Coverage under the Uniformed Services Health Benefits program, which includes CHAMPUS, can be used to meet the 5 year requirement; however, the employee must be enrolled in FEHB at time of retirement.) Employees

# Thrift Savings Plan
Summary of the Thrift Savings Plan for Federal Employees TSPBK08

The Thrift Savings Plan is a tax deferred savings plan. This means that savings are withheld from the gross salary before income taxes and taxes are not paid until benefits are dispersed from the plan. Contributions to the fund must be made through payroll deduction. As such, retirees are not eligible to contribute to TSP but contributions in a retiree's account continue to accrue interest. The 2005 limit on employee's contributions is $14,000. CSRS employees may contribute up to 10% of basic pay with no agency matching contributions.

Effective January 2001 and each following year, the contribution limits will increased by one percent until January 2006, at which time the limit will be eliminated completely. The IRS annual deferral limits will remain in effect. There are no changes in the Agency Automatic or Matching contributions.

Public Law 108-459 eliminates the Thrift Savings Plan open seasons and the restrictions on contribution elections which are tied to open seasons. Beginning July 1, 2005, participants may file contribution elections with their agencies or uniformed services and those elections must be make effective no later than the first full pay period after they are filed.

**Investing in TSP:** There are 5 investment options for TSP.

- Government Securities Fund or "G" Fund: Consists exclusively of investments in short-term non-marketable U.S. Treasury securities specially issued to the TSP. There is NO risk of loss (negative returns) in the G Fund.
- Fixed or "F" Fund: Contributions are invested in the Barclays U.S. Debt Index Fund, a commingled bond index fund designed to track as closely as possible the Lehman Brothers Aggregate (LBA) index. The LBA represents U.S. Government Corporate and mortgage-backed securities sectors of the fixed-income securities market.
- Common Stock or "C" Fund: Invested primarily in the Barclays Equity Index Fund. a commingled stock index fund that tracks the Standard & Poor's 500 stock index.
- Small Capitalization Index Investment or "S" Fund: Tracks the returns of the Wilshire 4500 Stock Index, which includes those US stocks that are not found in the S&P 500. You can track their performance at www.wilshire.com/indexes/last_month.htm.
- International Stock Index Investment or "I" Fund: Tracks the return of the Morgan Stanley Capital International EAFE (Europe, Australia, and Far East) stock index, an index that tracks the overall performance of the major companies and industries in the European, Australian, and Asian stock markets. The EAFE index is published on the Morgan Stanley Website at ww.mscidata.com.

**Interfund Transfers:** You can move your money from one account to another by an Interfund transfer. This can be completed by one of three ways: 1) submitting a form to the TSP Service Office; 2) by calling the Thriftline at (504) 255-8777; or 3) by using your computer to complete the transfer. In order to use the Thriftline or your computer, you need to know your TSP Pin.

**Loans:** Employees can borrow against their TSP account. The money available to borrow is money invested and the earnings on that money. The minimum loan amount is $1000. Therefore, employees must have at least a $1000 balance of their own contributions and earnings on those contributions to qualify for a TSP loan. There is also a maximum amount that can be borrowed. That amount is dependent on the amount contributed and limitations by the Internal Revenue Code. There are two types of loans, general purpose and purchase of a primary residence. Comprehensive loan information can be obtained from the *TSP Loan Book*.

**In-Service Withdrawals:** Employees can request one of two different TSP In-Service Withdrawals. In either case, these in-service withdrawals are taxable in the year in which payment is made and subject to federal tax withholding. In addition, the hardship withdrawal would also subject to the 10% early withdrawal penalty tax if under age 59½ when the hardship withdrawal is disbursed.

- **Age Based:** To qualify for the Age Based Withdrawal, employees must be age 59½ or older and can make a one-time withdrawal of all or a portion of their vested account balance.
- **Hardship:** Employees (regardless of age) who certify under penalty of perjury that they have a genuine financial hardship, can make a withdrawal of their own contributions and the earnings on their contributions (up to the amount of their actual hardship). After making a hardship withdrawal, employees cannot contribute to TSP for 6 months, losing matching contributions for that period.

**Participant Statements:** Employees receive participant statements quarterly each year from the Thrift Savings Plan Service Office. Employees also have the option of viewing their TSP account balance on the computer. Employees must know their TSP Pin number in order to access this information.

**Withdrawal Elections:** Upon leaving federal service, the available payment methods include:

- Taking a lump-sum of your TSP balance
- Transfering your balance into an IRA
- Having TSP compute a payout option
  - Specific dollar amount
  - IRS Life Expectancy Table
- Purchasing an annuity (which means your money is no longer in TSP). You can purchase single life annuity with level payments, single life annuity with increasing payments, joint & survivor spouse annuity with level payments, joint & spouse annuity with increasing payments, joint & survivor annuity (other).

The TSP Summary Booklet, Withdrawing Your TSP Account After Leaving Federal Service, TSP Annuities, and Important Tax Information on Withdrawing Your TSP Account, provide comprehensive information on this plan and its payout options.

**When Must I Do Something With My TSP Account?** Separated participants must withdraw their TSP accounts, or begin receiving monthly payments, by April 1 of the year following the year in which they reach age 70½. Participants who separate after they reach age 70½ must withdraw their TSP accounts (or begin receiving monthly payments) by April 1 of the year following the year in which they separate. If a separated participant does not make a withdrawal election which can be implemented by the deadline, the TSP must purchase an annuity for the participant.

**Catch-Up Contributions:** On November 27, 2002, the President signed Public Law 107-304, permitting eligible TSP participants to make catch-up contribution into their TSP accounts beginning in or after the year in which they turn age 50.

Catch-up contributions are supplemental tax deferred employee contributions, which are in addition to regular contributions by participants age 50 or older who would like to make contributions above the maximum amount they could otherwise make to the TSP. Catch-up contributions can only be made from basic pay.

In order to be eligible to participate, employees must be age 50 or older; currently employed and in pay status; and contributing either the maximum TSP contribution percentage allowed or contributing an amount that reaches the IRS elective deferral limit by the end of that year.

The amount employees can contribute for 2005 is 10% regular TSP contributions OR $14,000 plus an additional $4000 for a total of $18,000. Catch-up contributions are applied to the year of the pay date for which they are made. This means that, for example, if a catch-up contribution with a December 31, 2004, pay date is received by the TSP on January 5, 2005, it applies to the 2004 limit.

Catch-up contributions are allocated to accounts according to the most current contribution allocation on file, a separate allocation for catch-up contributions is not permitted.

To participate, employees need to file a TSP-1C indicating the dollar amount they want to contribute each pay period. Catch-up contributions must be made through payroll deductions. Since there is no open season for catch-up contributions, employees can make an election at any time and the election will become effective the first full pay period following the agency's receipt of the election. The election remains valid through the end of the calendar year in which it is made. Unlike regular TSP contributions, employees can start and stop catch-up contributions at any time.

**Thriftline Telephone & Fax Numbers:** From the 50 States, including the District of Columbia, The Virgin Islands, Puerto Rico, Guan, American Samoa, and Canada, call the following numbers toll-free:

| | |
|---|---|
| Telephone: | 1-877-968-3778 |
| TDD: | 1-877-847-4385 |
| Service Office Fax: | 1-504-255-5199 |

Other international callers should continue to call the following numbers (not toll-free):

| | |
|---|---|
| Telephone: | 1-504-255-8777 |
| TDD: | 1-504-255-5113 |

    CSRS Federal Benefits ©Copyright 2005, E Lumsden

## GENERAL INFORMATION AND INSTRUCTIONS

If you have separated from Federal service, you can use this form to request a one-time-only withdrawal of part of your vested account balance. When you are ready to withdraw the rest of your account, but no later than the withdrawal deadline (April 1 of the year following the year in which you turn 70½ and are separated from service), submit Form TSP-70, Request for Full Withdrawal. If you would like to request a withdrawal of your entire vested account balance now, do not complete this form; instead, complete Form TSP-70. (Note: If you have both a uniformed services and a civilian TSP account, you can also combine your accounts into one by completing Form TSP-65, Request to Combine Uniformed Services and Civilian TSP Accounts. For detailed rules about this feature, read Form TSP-65.)

Before completing a withdrawal request, you should read the booklet *Withdrawing Your TSP Account After Leaving Federal Service* and the notice "Important Tax Information About Payments From Your TSP Account." Your former agency should have given you these materials when you separated from service. If you do not have these materials, download them from the TSP Web site (www.tsp.gov) or ask your former agency for a copy.

**You are not eligible for a partial withdrawal if:**

- Your vested account balance is less than $1,000. The minimum amount for a partial withdrawal is $1,000.

- You have previously made a partial withdrawal after separating from Federal service. Only one partial withdrawal is allowed.

- You have previously made an age-based in-service withdrawal.

- You expect to be rehired after a break in service of less than 31 calendar days. You must be separated from Federal service for 31 or more days in order to be eligible for a post-employment withdrawal. If you expect to be rehired after a break in service of **31 or more full calendar days**, see the withdrawal booklet for important information about rehired participants and withdrawal restrictions.

**There are two ways to request a partial withdrawal:**

1. Complete Form TSP-77 and mail it to the TSP Service Office. (Your request cannot be processed until your agency submits confirmation of your separation to the TSP.)

   **or**

2. Use the TSP Web site (www.tsp.gov) to begin (and in some cases, complete) your withdrawal request. **If your request** cannot be completed on the Web because additional signatures, information, or documentation is needed, you may print the partially completed withdrawal request form at the end of your online session. Review the form, complete any missing information, and provide any required signatures and documentation. **Do not change or cross out** any of the prefilled information resulting from your entries on the Web; the form may not be accepted for processing if you do.

**Note:** Access to the Web site withdrawal request area is not available to a participant until his or her separation is reported to the TSP.

After completing your withdrawal request, make a copy for your records. Mail the original to:

**TSP Service Office**
**P.O. Box 385021**
**Birmingham, AL 35238**

Or fax the completed form to our toll-free fax number:

**1-866-817-5023**

If you have questions, call the (toll-free) ThriftLine at 1-TSP-YOU-FRST (1-877-968-3778) or the TDD at 1-TSP-THRIFT5 (1-877-847-4385). Outside the U.S. and Canada, please call 404-233-4400 (not toll free).

**SECTION I.** Complete Items 1 – 9. The address you provide on this form will be used to update the address in your TSP account record. If you are married, show your spouse's Social Security number and name in Items 10 and 11.

Spouses' rights apply to all partial withdrawals from your TSP account, as follows:

**Spouses' Rights for Partial Withdrawals**

| Classification | Requirement | Exceptions |
|---|---|---|
| FERS | Spouse must provide written consent to the partial withdrawal. | Whereabouts unknown or exceptional circumstances |
| CSRS | Spouse must be notified of the request for a partial withdrawal. | Whereabouts unknown |

**SECTION II.** If you are a **CSRS participant**, you must complete the information about your spouse's address so that he or she may be notified of your withdrawal. If you do not know your spouse's whereabouts, check Item 17 and submit Form TSP-16, Exception to Spousal Requirements, with your withdrawal request.

**SECTION III.** If you are a married **FERS participant**, complete this section. Your spouse must consent to a partial withdrawal from your TSP account by signing and dating Items 18 and 19. Your spouse's signature must be notarized (Item 20).

Your spouse has the right to a joint and survivor annuity with a 50% survivor benefit, level payments, and no cash refund, unless your spouse waives his or her right to that annuity. By consenting to the partial withdrawal on this form, your spouse indicates his or her understanding that any amount disbursed now will not be available later for the purchase of such an annuity.

If you cannot obtain your spouse's signature because his or her whereabouts are unknown or you believe exceptional circumstances apply, check the box in Item 21 and submit Form TSP-16, Exception to Spousal Requirements, with the required documentation.

**SECTION IV.** You may withdraw $1,000 or more. Use a whole dollar amount only. If your vested account balance is less than $1,000, submit a full withdrawal request using Form TSP-70.

**Transfer Option.** You may elect to transfer all or any portion of your partial withdrawal payment to an eligible employer plan or a traditional IRA. Payments that are not transferred directly to an eligible employer plan or a traditional IRA are subject to **mandatory 20% Federal income tax withholding**. Read the tax notice "Important Tax Information About Payments From Your TSP Account" for detailed tax rules affecting payments from your TSP account.

Form TSP-77 (10/2005)